

ATTORNEY FOR APPELLANT

Russell B. Cate
Cate, Terry & Gookins LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carmen Nicolle Harbaugh, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 9, 2018 <br><br> Court of Appeals Case No. <br> 29A04-1706-CR-1228 <br><br> Appeal from the Hamilton <br> Superior Court <br><br> The Honorable Jonathan M. <br> Brown, Judge <br><br> Trial Court Cause No. <br> 29D02-1507-F4-6405 |

**May, Judge.**

[1] Carmen Nicolle Harbaugh appeals her convictions of Level 4 felony dealing in cocaine,[1] Level 4 felony dealing in methamphetamine,[2] Level 6 felony possession of cocaine,[3] Level 6 felony possession of methamphetamine,[4] Class B misdemeanor possession of marijuana,[5] and Class C misdemeanor possession of paraphernalia.[6]  She argues the trial court abused its discretion when it admitted the evidence obtained as part of the search of her vehicle.  She presents two issues for our review, one of which we find dispositive: whether the State presented sufficient evidence officers had probable cause to conduct a warrantless search of her vehicle.  We affirm.

## Facts and Procedural History[7]

[2] On July 25, 2015, Westfield Police Captain John Lowes was conducting surveillance in plain clothes and in an unmarked police car.  At approximately 2:00 p.m., a black Chevy Blazer passed his location.  Captain Lowes recognized the vehicle, which belonged to Harbaugh, and one of the occupants of the

---

[1] Ind. Code § 35-48-4-1(c) (2014).

[2] Ind. Code § 35-48-4-1.1(c) (2014).

[3] Ind. Code § 35-48-4-6(a) (2014).

[4] Ind. Code § 35-48-4-6.1(a) (2014).

[5] Ind. Code § 35-48-4-11(a).

[6] Ind. Code § 35-48-4-8.3(b).

[7] We held oral argument on this matter on February 5, 2018, at Milan High School in Milan, Indiana.  We thank the teachers and staff of Milan High School for their hospitality and counsel for their able presentations.

vehicle, Harbaugh, from prior encounters. He believed the driver of the vehicle to be Harbaugh's boyfriend, Jacob Beach. Captain Lowes knew Beach's driving privileges were suspended and Beach had an outstanding arrest warrant for a probation violation. Captain Lowes followed the Chevy Blazer and contacted Sergeant Robert Dine for back up.

[3] Captain Lowes observed neither Harbaugh nor Beach was wearing a seatbelt. In addition, Captain Lowes saw the Blazer fail to stop at an intersection and the license plate on the vehicle was expired. He relayed this information to Sergeant Dine, who pulled the Blazer over in a fast food parking lot. Sergeant Dine approached the vehicle, confirmed Beach's identity, and asked him to exit the vehicle. After a brief scuffle, Captain Lowes and Sergeant Dine arrested Beach.

[4] While Captain Lowes and Sergeant Dine were arresting Beach, K9 Officer Song Kang arrived on the scene with his K9 partner, Gorky. Captain Lowes decided to impound the Blazer because its license plate was expired, and he asked Harbaugh to exit the vehicle. She did so and sat down at a nearby picnic table.

[5] Officer Kang deployed Gorky "for a sniff of the vehicle[.]" (Tr. Vol. II at 23.) Gorky alerted on a zipped black bag in the middle of the back seat of the vehicle. Officer Kang opened the bag and found a small wooden box. Inside the wooden box, officers found plastic bags containing white powder and white crystalline substances, cash, Ziploc bags, and green plant material. Also in the

black bag were digital scales and pills. Officer Kang found Harbaugh's purse in the car. Inside the purse, he found several pills, some pills packaged for individual sale in small plastic bags, bags with a white powder residue, and a cell phone. Three compact mirrors with powder residue on them were also found inside the vehicle. Sergeant Dine place Harbaugh in handcuffs, and a female officer on the scene, Officer Angela Martin, conducted a search of Harbaugh's person and discovered three pills, a small plastic bag containing a white crystalline substance, three small broken pieces of straw, and a broken portion of an ink pen. The officers placed Harbaugh under arrest.

[6] On July 27, 2015, the State charged Harbaugh with Level 4 felony dealing in cocaine, Level 4 felony dealing in methamphetamine, Level 6 felony possession of cocaine, Level 6 felony possession of marijuana, Level 6 felony maintaining a common nuisance,[8] Class A misdemeanor possession of a controlled substance,[9] Class B misdemeanor possession of marijuana, and Class C misdemeanor possession of paraphernalia. On December 30, 2015, Harbaugh filed a motion to suppress. The trial court held a hearing on the motion to suppress on May 13, 2016, and denied the motion.

[7] On April 17, 2017, the State moved to dismiss the Level 6 felony maintaining a common nuisance and Class B misdemeanor possession of a controlled

[8] Ind. Code § 35-48-4-13(b)(1) (2014).

[9] Ind. Code § 35-48-4-7(a).

substance charges, and the trial court granted the request. Harbaugh's jury trial began on April 18, 2017. The jury returned a guilty verdict on all remaining counts. On May 19, 2017, the trial court sentenced Harbaugh to an aggregate sentence of nine years with four years suspended.

# Discussion and Decision

[8] The trial court admitted the evidence collected as part of the vehicle search. Harbaugh did not seek interlocutory review of the denial of her motion to suppress but instead appeals following trial. This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

[9] Our review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*.

[10] Harbaugh argues the search of her vehicle violated her rights under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution because the interior search of the vehicle by Officer Kang's K9 Gorky occurred "without probable cause, a warrant, or her consent." (Br. of Appellant at 20.)

# Fourth Amendment

[11] The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Lundquist*, 834 N.E.2d at 1067. Generally, to be lawful, a search must be conducted after police obtain a judicially issued search warrant. *Id*. When a search is conducted without a warrant, the State has the burden of proving an exception to the warrant requirement permits the admission of the evidence collected. *Id*.

[12] The "automobile exception" to the warrant requirement allows police to search a vehicle without obtaining a warrant if they have probable cause to believe the vehicle contains evidence of a crime. *State v. Hobbs*, 933 N.E.2d 1281, 1285 (Ind. 2010). Under this exception, "an operational vehicle is inherently mobile, whether or not a driver is behind the wheel or has ready access." *Id*. at 1286. A dog sniff of the exterior of the vehicle indicating the presence of illicit substances provides probable cause for a warrantless search of the interior of the vehicle under the automobile exception. *Id*.

[13] Harbaugh does not argue about whether her vehicle was inherently mobile. Instead, Harbaugh argues the State did not provide evidence Officer Kang's K9 partner alerted outside her vehicle prior to entering the vehicle and finding narcotics. Thus, she contends, the officers did not have probable cause to search the interior of her vehicle without a warrant.

[14] During trial, Officer Kang testified he "deployed [Gorky] into the vehicle[.]" (Tr. Vol. III at 25.) However, Sergeant Dine testified, during the Motion to Suppress hearing, "the dog indicated on the vehicle." (Tr. Vol. II at 23.) Our standard of review requires we consider the facts in the light most favorable to the State. *See Lundquist*, 834 N.E.2d at 1067 (appellate court considers facts in the light most favorable to the State). Thus, Gorky's alert outside Harbaugh's car created probable cause to search the vehicle under the automobile exception to the Fourth Amendment. *See Hobbs*, 933 N.E.2d at 1285 (exterior dog sniff resulting in alert for narcotics constitutes probable cause for interior search of vehicle under automobile exception to the Fourth Amendment).

[15] We acknowledge that Harbaugh's main contention on appeal is that Gorky never alerted outside the vehicle, only alerted once inside the vehicle, and the interior sniff of her vehicle which resulted in the discovery of contraband violated her constitutional rights under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Had there *only* been evidence that Gorky alerted inside the vehicle, *see* Tr. Vol. III at 25 (Officer Kang testified he "deployed [Gorky] into the vehicle"), this would have been an issue of first impression in Indiana. However, since the State also presented evidence Gorky alerted outside the vehicle, we need not address the legality of an interior dog sniff. *See Lundquist*, 834 N.E.2d at 1067 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Article 1, Section 11

[16] The language of Article 1, Section 11, the search and seizure provision of the Bill of Rights of the Indiana Constitution, is virtually identical to its Fourth Amendment counterpart. Article 1, Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Our Indiana Supreme Court has interpreted and applied Section 11 independently from federal Fourth Amendment jurisprudence. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

[17] To determine whether a search violates Article 1, Section 11 of the Indiana Constitution, we must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). "The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. In *Litchfield*, our Indiana Supreme Court summarized this evaluation:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search

or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

[18] Here, Gorky's indication to the presence of narcotics on the exterior of Harbaugh's vehicle provided a "degree of concern, suspicion, or knowledge that a violation occurred." *See Hobbs*, 933 N.E.2d at 1285 (exterior dog sniff resulting in alert for narcotics constitutes probable cause for interior search of vehicle under automobile exception to the Fourth Amendment). The interior search of Harbaugh's vehicle likely imposed a degree of intrusion into her ordinary activities; however, law enforcement need was elevated because, while she could not do so legally because the license plates were expired, Harbaugh could have absconded with the vehicle as it was operable at the time and she had not yet been arrested. The totality of the circumstances leads us to conclude the officers' search was reasonable. *See Myers v. State*, 839 N.E.2d 1146, 1154 (Ind. 2005) (upholding warrantless automobile search under similar circumstances). [10]

# Conclusion

---

[10] Harbaugh also argues the inventory search of her vehicle was improper for a variety of reasons including the use of Gorky in the search, the lack of inventory slip indicating the items in the car, and the opening of closed containers. While we will not address this issue as the probable cause issue is dispositive, we remind the Westfield Police Department of the importance of complying with published department policy when conducting an inventory search.

[19] Gorky's alert to the presence of narcotics supplied probable cause for officers to engage in a warrantless search of Harbaugh's car under the automobile exception of the Fourth Amendment. Similarly, based on the totality of the circumstances, the warrantless search did not run afoul of Article 1, Section 11 of the Indiana Constitution. Therefore, the trial court did not abuse its discretion when it admitted evidence obtained as part of the warrantless search of Harbaugh's vehicle. Accordingly, we affirm her convictions.

[20] Affirmed.

Najam, J., and Altice, J., concur.