

FILED

Jun 29 2018, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alonzo R. Weekly, *Appellant-Defendant,* | June 29, 2018 |
| v. | Court of Appeals Case No. 20A03-1712-CR-2922 |
| | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Gretchen S. Lund, Judge |
| | The Honorable Kristine A. Osterday, Magistrate |
| | Trial Court Cause No. 20D04-1703-F6-392 |

**Najam, Judge.**

# Statement of the Case

Alonzo R. Weekly appeals his convictions and sentence following a jury trial for operating a vehicle while intoxicated with a previous conviction, as a Level 6 felony, and a habitual vehicular substance offender ("HVSO") enhancement. He presents two issues for our review:

1. Whether the trial court abused its discretion when it admitted into evidence the result of a chemical breath test and the testimony of two officers.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

At 12:41 a.m. on March 11, 2017, Officer Kevin Corona and Corporal Lee Brooks with the Elkhart Police Department observed Weekly driving a motorized scooter through an intersection "at what appeared to be a high rate of speed." Tr. Vol. II at 85. The officers, who were in a marked police vehicle, began to follow Weekly, and they witnessed Weekly fail to stop at two stop signs. Accordingly, the officers initiated a traffic stop.

When Officer Corona and Corporal Brooks approached Weekly, they both observed that he had slurred speech and bloodshot, glassy eyes. They could also smell an odor of alcohol on Weekly's breath. Based on those observations, Officer Corona conducted three standardized field sobriety tests on Weekly.

Weekly failed the first test, and he did not complete the other two tests. Officer Corona then asked Weekly to submit to a certified chemical breath test at the police station. Weekly agreed to take the test. At that point, the officers transported Weekly to the police station, and Corporal Brooks performed the certified breath test. The results of the breath test showed that Weekly had an alcohol concentration of 0.207 gram of alcohol per 210 liters of breath.

[5] The State charged Weekly with one count of operating a vehicle while intoxicated in a manner that endangers a person, as a Class A misdemeanor (Count I), and one count of operating a vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 210 liters of breath, as a Class A misdemeanor (Count II). The State later added one count of operating a vehicle while intoxicated with a previous conviction, as a Level 6 felony, and alleged that Weekly was an HVSO. Prior to trial, Weekly filed a motion to suppress evidence alleging that the evidence against him was obtained illegally because "the stop was unjustified without reasonable suspicion or probable cause." Appellant's App. Vol. II at 34. The trial court denied that motion after a hearing.

[6] The trial court held a bifurcated jury trial on October 23, 2017. During the first phase of the trial, both Officer Corona and Corporal Brooks testified to their observations of Weekly during the traffic stop, including the results of the field sobriety tests, without objection from Weekly. The State also presented as

evidence, without objection, the video recording of the traffic stop.[1] And the State presented the results of Weekly's chemical breath test, which the trial court admitted over Weekly's objection.

[7] At the conclusion of the first phase of his trial, the jury found Weekly guilty of Counts I and II. In phase two of the trial, Weekly pleaded guilty to operating a vehicle while intoxicated with a previous conviction, as a Level 6 felony, and he admitted to being an HVSO. The trial court merged the guilty verdicts for Counts I and II and entered judgment of conviction on the Level 6 felony and the HVSO enhancement. The trial court sentenced Weekly to two years with the Department of Correction for operating a vehicle while intoxicated with a previous conviction, as a Level 6 felony. And, for the HVSO enhancement, the trial court imposed "an additional three (3) years at the Indiana Department of Correction, consecutive to the sentence" for the Level 6 felony.[2] Appellant's App. Vol. II at 124. This appeal ensued.

---

[1] Weekly affirmatively stated that he had "no objection" to the admission of the video exhibit as evidence. Tr. Vol. II at 98. However, Weekly did object to the publication of the video. The trial court granted the State's motion to publish over Weekly's objection.

[2] Weekly was also on probation for two prior offenses at the time of his sentencing hearing. Accordingly, the trial court revoked Weekly's probation and imposed his previously suspended sentence for one offense and ordered Weekly back to reporting probation for the second offense. The trial court ordered both of those sentences to run consecutive to the sentence imposed for the instant offense.

# Discussion and Decision

## *Issue One:  Admission of Evidence*

[8]   Weekly first contends that the trial court abused its discretion when it admitted into evidence the results of the chemical breath test and the officers' testimony, which included their observations of Weekly following the traffic stop and the results of the field sobriety tests.  Weekly initially challenged the admission of this evidence through a motion to suppress but now appeals following a completed trial.[3]  Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.  *Lanham v. State*, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010).  This court has previously held that

> [o]ur review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection.  [*Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).]  We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling.  *Id*.  However, we must also consider the uncontested evidence favorable to the defendant.  *Id*.

*Harbaugh v. State*, 96 N.E.3d 102, 106 (Ind. Ct. App. 2018).

---

[3]  Throughout his brief on appeal, Weekly also contends that the trial court erred when it denied his motion to suppress.  However, because Weekly appeals after a completed trial, "the question of whether the trial court erred in denying his motion to suppress is no longer viable."  *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

[9] Weekly specifically contends that the trial court abused its discretion when it admitted the results of the chemical breath test over his objection and that, without that evidence, "there would be no remaining probative evidence sufficient to convict [Weekly] of Operating While Intoxicated or Operating with an ACE of 0.15 or greater." Appellant's Br. at 18. He also contends that the trial court committed fundamental error when it admitted into evidence the officers' testimony, including their observations of Weekly during the traffic stop and the results of the field sobriety tests.[4]

[10] Weekly asserts that the trial court should not have admitted the evidence because the officers did not have reasonable suspicion to stop him and, therefore, the stop violated his Fourth Amendment rights.[5] The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV.

[11] Our Supreme Court has held that

> [o]ur jurisprudence reflects two types of police encounters that implicate Fourth Amendment protection: the investigatory stop and the custodial arrest. *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). An investigatory stop is generally brief in duration and is constitutionally permissible so long as the law enforcement officer "has a reasonable suspicion supported by articulable facts

---

[4] Weekly alleges that the trial court committed fundamental error when it admitted the officers' testimony because he did not object at trial.

[5] While Weekly makes one reference in his brief to Article I, Section 11 of Indiana Constitution, he has not developed a separate argument on appeal based upon the Indiana Constitution. Accordingly, we will only review whether the traffic stop violated his rights under the federal constitution.

that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The custodial arrest constitutes a greater restriction upon the subject's liberty and requires a commensurately greater justification: probable cause. *Clark*, 994 N.E.2d at 261.

*State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014).

[12] Here, the question is whether the police had reasonable suspicion to support a brief investigatory stop, i.e., a "*Terry* stop," of Weekly's motorized scooter. "When determining whether an officer had reasonable suspicion for a *Terry* stop, we consider whether 'the totality of the circumstances' presented 'a particularized and objective basis' for the officer's belief that the subject was engaged in criminal activity." *Id.* (quoting *Sellmer v. State*, 842 N.E.2d 358, 360 (Ind. 2006)).

[13] It is well-settled that "[i]f an officer observes a driver commit a traffic violation, he has probable cause—and thus also the lesser included reasonable suspicion— to stop that driver." *Id.* And, here, both Officer Corona and Corporal Brooks testified that they witnessed Weekly fail to stop at two stop signs. Thus, the officers observed Weekly commit two traffic violations and, as such, the officers had probable cause to stop Weekly.[6] *See, e.g., Staten v. State*, 946 N.E.2d 80, 83

---

[6] Weekly contends that the officers did not have reasonable suspicion to stop him because "neither officer can testify to what the relevant speed limit was to establish that [Weekly] committed the traffic violation of speeding." Appellant's Br. at 15-16. But, while both officers testified that Weekly's high rate of speed is what drew the attention of the officers, the affidavit for probable cause states that the reason for the traffic stop was only because Weekly had "disregarded stop signs[.]" Appellant's App. Vol. II at 15.

(Ind. Ct. App. 2011). And as soon as Officer Corona and Corporal Brooks approached Weekly, they noticed that his speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol. Weekly then attempted to perform three field sobriety tests, but he failed one and did not complete the other two. Finally, Weekly consented to a chemical breath test. The traffic stop and subsequent investigation did not violate Weekly's Fourth Amendment rights. Weekly's argument on appeal is simply a request for this court to reweigh the evidence, which we will not do. The trial court did not abuse its discretion when it admitted into evidence the results of the breath test that followed the traffic stop. *See id*. And the trial court did not commit any error, let alone fundamental error, when it admitted the testimony of the two officers. Accordingly, we affirm Weekly's convictions.

### Issue Two: Sentencing

[14] Weekly next contends that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v.*

> *State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), decision clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[15] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Further, the location where a sentence is to be served is an appropriate focus for application of our review and revise authority. *See Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007).

[16] Weekly was convicted of one count of operating a vehicle while intoxicated with a previous conviction, as a Level 6 felony, and he was found to be an HVSO. The sentencing range for a Level 6 felony is six months to two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b)

(2018). And the court shall sentence a person found to be an HVSO to an additional term of one to eight years of imprisonment. I.C. § 9-30-15.5-2(d).

[17] Here, the trial court identified as mitigating factors the fact that Weekly has an outstanding child support obligation and that Weekly's imprisonment will place a hardship on his children. The trial court also acknowledged the fact that Weekly's Indiana Risk Assessment System score reflected a low risk to reoffend. But the trial court found the following aggravating circumstances: Weekly's criminal history; that Weekly has a history of violating conditions of probation and community corrections; and that previous sanctions have not been successful in keeping Weekly from engaging in criminal activity. Accordingly, the trial court sentenced Weekly to an aggregate term of five years in the Department of Correction.

[18] Weekly maintains that his sentence is inappropriate in light of the nature of the offense because "the actual actions by [Weekly] in the present case are the bare elements of an offense that is a Class A misdemeanor" and that his offense was only elevated to a Level 6 felony because of a prior offense. Appellant's Br. at 24. He further contends that the nature of his offense is "unremarkable" and that he "was cooperative with the police during the traffic stop and during his arrest[.]" *Id*. Be that as it may, we consider both the nature of the offense *and* Weekly's character in our review. *See Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). And Weekly's character persuades us that his sentence is not inappropriate.

[19] At the time of the instant offense, Weekly's criminal history included three felony convictions and four misdemeanor convictions, and three of those convictions were for operating a vehicle while intoxicated. And Weekly has had his probation revoked on one previous occasion. Further, Weekly was on probation for two prior instances of operating a vehicle while intoxicated when he committed the current offense. As such, we cannot say that Weekly's five-year sentence is inappropriate in light of his character.

[20] Weekly also asserts that his placement in the Department of Correction is inappropriate because his incarceration would result in a hardship on his children and because "there were more appropriate options to simply warehousing a defendant in the Department of Corrections [sic] for the entirety of a sentence." Appellant's Br. at 27. But, as the trial court found, Weekly "has a history of violating conditions of probation and community corrections" and "other sanctions previously imposed have not been successful in keeping [Weekly] from engaging in criminal activity." Appellant's App. Vol. II at 123. Accordingly, Weekly has not demonstrated that his placement in the Department of Correction is inappropriate. Weekly's five-year sentence executed in the Department of Correction is not inappropriate and we affirm his sentence.

[21] However, we also address the State's contention that the trial court erred when it ordered the HVSO portion of Weekly's sentence to be consecutive to the sentence for the felony conviction. The State contends that "the habitual portion should be an enhancement of the sentence for the Level 6 felony"

pursuant to Indiana Code Section 9-30-15.5-2. Appellee's Br. at 5 n.1. We agree.

[22] Indiana Code Section 9-30-15.5-2 provides, in relevant part, that "[t]he court shall sentence a person found to be a habitual vehicular substance offender to an additional fixed term of at least one (1) year but not more than eight (8) years of imprisonment, *to be added* to the term of imprisonment imposed under IC 35-50-2 or IC 35-50-3." I.C. § 9-30-15.5-2(d) (emphasis added).

[23] We hold that the "to be added" language in the HVSO statute is equivalent to the "attach" language in Indiana's habitual offender statute, which provides, in relevant part:

> Habitual offender is a status that results in an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence. The court shall *attach* the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced.

I.C. 35-50-2-8(j) (emphasis added).

[24] And it is well-settled that "'[a] habitual offender finding does not constitute a separate crime nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony.'" *Kilgore v. State*, 922 N.E.2d 114, 120 (Ind. Ct. App. 2010) (quoting *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997)). Accordingly, we hold that an HVSO finding does not constitute a separate crime nor result in a separate sentence but is an enhancement to an underlying felony conviction. The trial court erred when it

ordered the HVSO sentence to run as a separate, consecutive sentence. We reverse that portion of the sentencing order and remand to the trial court with instructions to resentence Weekly in accordance with this opinion. *See id*.

[25] Affirmed in part, reversed in part, and remanded with instructions.

Robb, J., and Altice, J., concur.