

IN THE

# Court of Appeals of Indiana

Juan C. Ocampo,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

FILED

Aug 29 2025, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

August 29, 2025

Court of Appeals Case No.
24A-CR-2785

Interlocutory Appeal from the Clark Circuit Court

The Honorable Bradley B. Jacobs, Judge

Trial Court Cause No.
10C02-2110-F2-39

---

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] After being charged with several drug offenses, Juan Ocampo filed a motion to suppress evidence obtained during a search of his vehicle conducted by officers after a K9 entered the open passenger's door, sniffed throughout the vehicle's interior, and eventually alerted to the presence of drugs inside.

[2] In this interlocutory appeal, Ocampo challenges the trial court's denial of his motion to suppress, arguing (1) the K9's entry into his vehicle was an unlawful search in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution and (2) that even if officers had probable cause to conduct an otherwise lawful search, they nonetheless exceeded the scope of a constitutionally permissible search by dismantling components of the vehicle.

[3] This appeal presents a matter of first impression in Indiana: the legality of a K9's interior sniff of a vehicle before probable cause has been established to conduct a search. Joining the federal circuit courts that have addressed the issue, we adopt the "instinctive entry rule," under which a K9's instinctive entry into a vehicle does not implicate the Fourth Amendment so long as it is not directed, encouraged, or facilitated by officers.

[4] Applying this rule to the circumstances of this case, we find that the officers facilitated the K9's entry into Ocampo's vehicle and, consequently, searched

the vehicle without probable cause in violation of the Fourth Amendment. Accordingly, we reverse and remand.

## Facts and Procedural History

In the fall of 2021, the Jeffersonville Police Department received a tip from a Louisville Metro Police Department detective that Ocampo was driving southbound on I-65 in a black 2012 Dodge Caravan. According to the detective, Ocampo's vehicle was the subject of "a drug investigation[.]" Transcript at 35.

That evening, Jeffersonville Police Officers Levi James and Hunter Powell "staged an area" on I-65 near "the Scott County and Clark County borders and waited for Mr. [Ocampo] and the vehicle to arrive[.]" *Id.* at 35 With Officer Powell was his K9 partner, Swag. Swag is trained to detect narcotics and alert officers to the presence of "four odors: marijuana, heroin, cocaine, and methamphetamine." *Id.* at 6.

As Ocampo drove through the staged area, Officer Powell saw the vehicle "commit infractions[.]" *Id.* at 7. Officer Powell radioed that information to Officer James, who pulled Ocampo over. As Officer James explained the reason for the stop to Ocampo and his passenger, Amanda De La Torre, Officer Powell arrived on the scene and approached the passenger's side of the vehicle.

Shortly after Officer Powell's arrival, Officer James asked Ocampo to step out. Officer Powell then began speaking with De La Torre, who remained seated in the passenger's seat. State's Exhibit A (first file) at 2:50. De La Torre cracked

open the passenger door, presumably to facilitate this conversation since her window was not rolled down. *Id.* at 2:51. Officer Powell then opened the door fully. *Id.* at 3:10.

[9] After a brief conversation, Officer Powell asked De La Torre to step out and come to the back of the vehicle. *Id.* at 3:40. Neither De La Torre nor Officer Powell closed the passenger door. *Id.* However, Officer Powell did shut the driver-side door, which Ocampo and Officer James had similarly left open. *Id.* at 3:55.

[10] Officer James asked Officer Powell to have Swag "perform an exterior vehicle sniff[.]" Tr. at 8. Officer Powell got Swag from his police car and brought him to the front of Ocampo's vehicle. From there, Swag began an on-lead[1] exterior sniff, moving counterclockwise around the vehicle. Swag did not alert for the presence of narcotics during this exterior sniff.

[11] As Swag neared the open passenger door, Officer Powell removed his lead. State's Ex. A (first file) at 6:10. According to Officer Powell, he took Swag's lead off

> at that point since, when he made the intention to enter the vehicle I will take him off the lead he was on[.] … I don't want to allow him to continue to search inside the vehicle on lead due to getting hung up around armrests or the seats or stuff like that, so when I

---

[1] As used in this Opinion, "lead" is synonymous with "leash," so "on-lead" means the same as "on a leash."

say take him off lead to allow him to continue his search in the vehicle.

Tr. at 8 [sic throughout]. Officer Powell further explained that "if my dog becomes hung up around the armrest, a headrest, around a seat, now my dog cannot complete his search[.] [H]e is now hung up he can't move[.] [T]hat's why I take him off lead and allow him to search without anything holding him back." *Id.* at 31-32.[2]

[12] With his lead removed, Swag jumped through the open passenger door and climbed into the second row of seats. State's Ex. A (first file) at 6:10. As Swag sniffed behind the driver's seat, Officer Powell leaned into the vehicle and shone a flashlight on that area. *Id.* at 6:20. Swag then moved toward the front of the vehicle and sniffed between the driver's and passenger's seats. *Id*. at 6:26. Again, Officer Powell leaned into the vehicle with his flashlight to observe. *Id.* at 6:31.

[13] Swag eventually "moved towards the rear of the vehicle" where he alerted to the presence of narcotics in the third row of seats and "scratch[ed] at one of the body plastics there on the passenger side[.]" Tr. at 9. As the State concedes, "[t]he body camera video shows that Officer Powell leaned into the vehicle to

---

[2] The Transcript of the hearing on Ocampo's motion to suppress does not include periods or other punctuation marks at the end of sentences. For clarity, we have supplied punctuation in brackets at the logical end of sentences when quoting from the Transcript.

see better where Swag was alerting[.]" Appellee's Brief at 15 n. 1; *see also* State's Ex. A (first file) at 7:07.

[14] The officers searched the vehicle after Swag's positive alert. As the officers searched, they noted that several side panels were loose, including the panel where Swag had alerted. Officer James's Arrest Report Narrative describes his actions after discovering the loose panel as follows:

> I removed the panel to find wiring with a fuse and switch attached and an audio speaker. The speaker did not have any screws attaching it. I was unable to remove it as it was secured to the panel from the rear. I observed a metal plate affixed to the back of the speaker where upon manipulating the speaker to see behind it I observed a brown plastic grocery sack down below the speaker. There were obvious modifications to the panel surrounding the speaker as well as to the speaker to create a hidden compartment. I utilized a screwdriver that was in the trunk area to pry the speaker out where I located a modified locking mechanism inside the panel. …
>
> I removed the brown plastic bag from the hidden compartment. The brown plastic bag contained an unknown object that was completely wrapped in duct tape. I took the item to my vehicle to unwrap it. Upon removing the duct tape, the item was wrapped in plastic wrap which was removed and revealed a vacuum sealed bag containing dryer sheets. Upon removing the first vacuum sealed bag with dryer sheets I discovered a second vacuum sealed bag containing a brown substance in a cylinder shape wrapped in plastic. I field tested the brown substance which produced a presumptive positive for the presence of heroin.

Appellant's Appendix Vol. 2 at 4.

The State charged Ocampo with Count I: Dealing in a Narcotic Drug, a Level 2 felony;[3] Count II: Dealing in Methamphetamine,[4] a Level 2 felony;[5] Count III: Possession of Methamphetamine, a Level 3 felony;[6] and Count IV: Possession of a Narcotic Drug, a Level 3 felony.[7] Ocampo filed a motion to suppress evidence of the narcotics found in the vehicle, arguing that (1) Swag's interior sniff was an unlawful search without probable cause and (2) even if the officers had probable cause to conduct an otherwise lawful search, they exceeded the lawful scope of that search by removing the loose panel and prying the speaker out to reveal a hidden compartment where narcotics were ultimately found.

Following a hearing, the trial court denied the motion to suppress. On Ocampo's motion, the trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

## Discussion and Decision

We review the denial of a motion to suppress "deferentially, construing conflicting evidence in the light most favorable to the ruling." *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) (quoting *Robinson v. State*, 5 N.E.3d 362, 365

---

[3] Ind. Code § 35-48-4-1(a)(2), (e)(1).

[4] While Officer James's Arrest Report Narrative provides that a field test indicated the presence of heroin, the basis for the methamphetamine charges is not clear from the record before us.

[5] I.C. § 35-48-4-1.1(a)(2), (e)(1).

[6] I.C. § 35-48-4-6.1(a), (d)(1).

[7] I.C. § 35-48-4-6(a), (d)(1).

(Ind. 2014)), *cert. denied*. Generally, the trial court's decision is reviewed "for abuse of discretion" and will be "reverse[d] only if [the] ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)).

[18] We note that the facts of this case are largely undisputed. As Ocampo's counsel explained to the trial court during the motion to suppress hearing:

> I don't think there is any dispute between the [S]tate and [Ocampo] on what the facts were and the officers were real cool on their reports[.] … [T]hey must have watched the video or whatever and have great memories because … the reports really matched a lot of what the body worn camera show [sic] and the testimony[.] … *I think this is mostly about the law.*

Tr. at 41 (emphasis added). "Where, as here, our decision concerns application of the law to undisputed facts, our standard of review is de novo." *Page v. State*, 173 N.E.3d 723, 726 (Ind. Ct. App. 2021) (citing *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013)). Moreover, "the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter*, 18 N.E.3d at 1001.

[19] With this background, we turn to Ocampo's argument that the officers violated "the Fourth Amendment [to the United States Constitution] and Article [1], Section 11 of the Indiana Constitution[.]" Appellant's Br. at 8. Though "'the

text of Article 1, Section 11 is nearly identical to the Fourth Amendment,[8] Indiana courts interpret and apply it 'independently from federal Fourth Amendment jurisprudence.'" *Lundquist v. State*, 179 N.E.3d 1051, 1054 (Ind. 2021) (quoting *McLain v. State*, 963 N.E.2d 662, 668 (Ind. Ct. App. 2012), *trans. denied*). When a "defendant [] allege[s] both federal and state constitutional violations[,] … we engage in independent examinations of the defendant's claims based upon Section 11 and the Fourth Amendment." *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006). Finding our examination of the Fourth Amendment dispositive, we focus our analysis there.

## 1. Fourth Amendment

[20] Generally, "the Fourth Amendment prohibits warrantless searches, but there are exceptions to the warrant requirement." *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005). "The 'automobile exception' to the warrant requirement allows police to search a vehicle without obtaining a warrant if they have probable cause to believe evidence of a crime will be found in the vehicle."

---

[8] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Similarly, Article 1, Section 11 of the Indiana Constitution establishes:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Ind. Const. art. 1, § 11.

*State v. Hobbs*, 933 N.E.2d 1281, 1285 (Ind. 2010). Under this principle, the "police need not obtain a search warrant before searching a vehicle that they have probable cause to believe contains illegal drugs." *Myers*, 839 N.E.2d at 1151.

## A. Interior Sniff

[21] It is well settled that "[a] dog sniff of the *exterior* of the vehicle indicating the presence of illicit substances provides probable cause for a warrantless search of the interior of the vehicle under the automobile exception." *Harbaugh v. State*, 96 N.E.3d 102, 106 (Ind. Ct. App. 2018) (emphasis added), *trans. denied*. Moreover, "a dog sniff is not a search protected by the Fourth Amendment" and "no degree of suspicion is required to summon [a] canine unit to the scene [of a lawful traffic stop] to conduct an *exterior* sniff of the car[.]" *Hobbs*, 933 N.E.2d at 1286 (emphasis added).

[22] In *Harbaugh*, the defendant, Carmen Harbaugh, appealed her convictions for various drug offenses, arguing that officers unlawfully searched her vehicle without probable cause by deploying a K9 into her vehicle. *Id*. at 106. The Court of Appeals declined to address this argument, reasoning that "[h]ad there *only* been evidence that [the dog] alerted inside the vehicle, this would have been an issue of first impression in Indiana. However, since the State also presented evidence [that the dog] alerted outside the vehicle, we need not address the legality of an interior dog sniff." *Id.* at 106-07 (emphasis in original) (internal citations omitted).

[23] But here, unlike *Harbaugh*, there is no evidence that Swag alerted outside Ocampo's vehicle. On the contrary, Officer Powell testified that Swag alerted for the first time *inside* the vehicle. Thus, the resolution of this appeal requires us to examine the legality of Swag's interior sniff.

[24] Though an Indiana appellate court has yet to address this issue, we observe that the federal circuit courts have consistently adopted the instinctive entry rule, under which a K9's entry into a vehicle is not a Fourth Amendment search where there "is no indication that the officers intended to facilitate the dog's entry into the car." *United States v. Guidry*, 817 F.3d 997, 1006 (7th Cir. 2016), *cert. denied*; *see also United States v. Pierce*, 622 F.3d 209, 214-15 (3d Cir. 2010) (finding no Fourth Amendment violation where a K9 jumped through an open car door "without facilitation by [its] handler"); *United States v. Sharp*, 689 F.3d 616, 620 (6th Cir. 2012) (finding no Fourth Amendment violation where K9 jumped through car window but "officers did not encourage or facilitate the dog's jump"), *cert. denied*; *United States v. Lyons*, 486 F.3d 367, 373-74 (8th Cir. 2007) (finding no Fourth Amendment violation where K9 stuck its head through a van's open window without being directed to do so by officers); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (finding no Fourth Amendment violation where K9 instinctively jumped into open hatchback); and *United States v. Mostowicz*, 471 F. App'x 887, 891 (11th Cir. 2012) (finding no Fourth Amendment violation where K9 entered through door left open by defendant and the officers did not encourage the jump).

[25] We start our review of the federal circuit court case law with the Seventh Circuit's opinion in *Guidry*.[9] There, officers asked the defendant, Jason Guidry, to step out of his car during a traffic stop. *Guidry*, 817 F.3d at 1001. Guidry complied but did not close the door as he stepped out. *Id.* The officers then conducted an exterior dog sniff, during which the K9 "indicated an odor of drugs by sitting down in front of the [driver] door." *Id.* at 1002. The K9 then "got up, approached the car, and, according to Guidry, put his head into the car through the open door." *Id.*

[26] The Seventh Circuit rejected Guidry's argument that the K9's entry into the car violated the Fourth Amendment, reasoning that

> [the officer] kept [the dog] on his leash and did not allow him to jump into the car. Moreover, the officers did not open the door— it was Guidry who left it open. Immediately after Guidry exited, [the officer] led [the dog] through her usual circuit, and despite her efforts to keep [the dog] outside of the car, his head allegedly entered it. In sum, the facts of this case are very different from those in [*United States v.*] *Winningham*[, 140 F.3d 1328 (10th Cir. 1998) (concluding that officers facilitated a dog's entry into a vehicle)] and more closely resemble cases where no Fourth Amendment violation was found.

*Id.* at 1006 (citing *Pierce*, 622 F.3d at 214-15; *Lyons*, 486 F.3d at 373-74; and *Stone*, 866 F.2d at 363-64).

---

[9] Though not binding on Indiana state courts, "[d]ecisions of the Seventh Circuit are entitled to our respectful consideration[.]" *Ind. Dep't of Pub. Welfare v. Payne*, 622 N.E.2d 461, 468 (Ind. 1993), *reh'g denied*.

[27] Ocampo's case is distinguishable from *Guidry*. We acknowledge that as in *Guidry*, De La Torre, not Officer Powell, initially opened the passenger door and left the door open after stepping out of the vehicle.[10] But that is where the factual similarities end. Unlike *Guidry*—where the officer kept the dog on a leash and tried to stop her from entering the car—Officer Powell removed Swag's lead and made no effort to stop him from jumping inside. And while the dog in *Guidry* first alerted while outside the car, Swag did not alert until after jumping inside, and even then, only after conducting an extensive interior sniff throughout the vehicle.

[28] Thus, we find that unlike *Guidry*, the circumstances of this case resemble *Winningham*. There, the Tenth Circuit found that the officers' "desire to *facilitate* a dog sniff of [a] van's interior … seem[ed] readily apparent" where "the officers themselves opened the door" and "then unleashed the dog as the dog neared the open door." *Winningham*, 140 F.3d at 1331 (emphasis in original). "When the dog reached the open door, he jumped into the van" and the officers allowed him to "methodically sniff[] the van's interior." *Id.* at 1330. Though here, De La Torre, not Officer Powell, opened the passenger door, the Seventh Circuit's analysis of *Winningham* against the backdrop of federal case law makes clear that the relevant inquiry when applying the instinctive entry

---

[10] And while the trial court concluded that Officer Powell prevented De La Torre "from closing the door," we agree with the trial court that there is no evidence he did so "to facilitate a search[.]" Appellant's Appendix Vol. 2 at 26. After all, Officer Powell closed the driver-side door, which would be unexpected had he just moments earlier left the passenger door open with the intent to enable Swag to eventually jump inside.

rule is not whether the officers' behavior exactly mirrors the circumstances of any given case, but whether there is an "indication that the officers intended to facilitate the dog's entry into the car." *Guidry*, 817 F.3d at 1006.

[29] Officer Powell may not have left the passenger door open intending—in that moment—for Swag to eventually jump through it, but he testified that once Swag "made the intention to enter" he took Swag "off lead *to allow him to continue his search in the vehicle*" without getting caught or hung up on anything inside. Tr. at 8 (emphasis added). Officer Powell further explained that he took Swag off lead so that once inside the vehicle, Swag could "search without anything holding him back[.]" *Id.* at 32. We cannot say, then, that there is no indication that Officer Powell intended to facilitate Swag's entry into Ocampo's vehicle.[11]

[30] In denying the motion to suppress, the trial court reasoned that it had found "no caselaw that expressly states removing the leash is 'facilitating'" and "decline[d] to create such a rule now." Appellant's App. Vol. 2 at 27. But *Guidry* and *Winningham* are explicit that whether an officer removed the K9's lead is relevant to determining whether the officer indicated a desire to facilitate the dog's entry into a vehicle. Moreover, we agree with the Third Circuit's

---

[11] Additionally, it is not clear to us, based on our review of Officer Powell's body-worn camera, that Swag indicated an intention to enter so much as Officer Powell led Swag around the vehicle to the open passenger door. Once Swag's path became blocked by the open door, he of course would have had to enter it unless Officer Powell led him around it. Officer Powell not only failed to lead Swag around the door, but he also quickly and seamlessly unclipped Swag's lead to enable him to continue his search inside.

observation that an instinctive jump "implies the dog enters the car without assistance, facilitation, or *other intentional action by its handler*." *Pierce*, 622 F.3d at 214 (emphasis added).[12]

[31] Swag did not enter Ocampo's vehicle without Officer Powell's involvement. Officer Powell testified that he knew that Swag was about to jump into the vehicle and removed Swag's lead for the express purpose of allowing him to search inside. Officer Powell further explained that had Swag's lead not been removed, he would have gotten "hung up around armrests or the seats or stuff like that" and would not have been able to freely move around the vehicle. Tr. at 8. Thus, the act of removing Swag's lead necessarily facilitated the interior vehicle sniff and the trial court erred in reaching the opposite conclusion.

## B. Fourth Amendment Trespass

[32] We further note that after Swag entered the vehicle, but before he alerted to the presence of narcotics, Officer Powell leaned into the vehicle several times to observe Swag's search. These facts implicate two landmark federal Supreme Court opinions applying the traditional Fourth Amendment trespass analysis. *See United States v. Jones*, 565 U.S. 400, 405 (2012) ("[O]ur Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of

---

[12] We further agree with the reasoning of Chief Judge Brady of the United States District Court for the Northern District of Indiana that "[a] dog search of the interior of a vehicle is permissible only when officers have probable cause to search the vehicle or where the dog, *without the involvement of its handler*, 'instinctively' jumps into the vehicle." *United States v. Holley-Chambers*, No. 1:22-CR-62-HAB, 2023 WL 5091210, at *6 (N.D. Ind. Aug. 8, 2023) (quoting *Guidry*, 817 F.3d at 1006) (emphasis added).

the 20th century."); *see also Florida v. Jardines*, 569 U.S. 1, 11 (2013) (explaining that "[o]ne virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy.").

[33] First, in *Jones*, agents installed a GPS tracking device onto a suspect's vehicle while it was parked in a public lot. 565 U.S. at 403. The Court held that the attachment of the device was an unlawful search, reasoning that "[t]he Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404-05.

[34] Second, in *Jardines*, detectives entered the curtilage of a suspect's home[13] where a drug-sniffing dog alerted to the scent of narcotics coming from under the base of the front door. 569 U.S. at 3-4. The Court held that because the detectives physically intruded into property subject to Fourth Amendment protection, their use of the dog was an unlawful search. *Id.* at 11-12.

[35] Ocampo contends that *Jones* and *Jardines* implicitly overturned the instinctive entry rule and calls *Stone* and *Sharp* "outdated under more recent U.S. Supreme Court case law[.]" Appellant's Br. at 15. We do not agree. Had Swag entered

---

[13] "The home's curtilage encompasses 'the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home.'" *United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002) (quoting *Siebert v. Severino*, 256 F.3d 648, 653-54 (7th Cir. 2001)).

the vehicle on instinct, *i.e.*, without interference from Officer Powell, federal circuit court cases post-dating *Jones* and *Jardines* consistently hold that the instinctive entry rule would apply. *See*, *e.g.*, *United States v. Keller*, 123 F.4th 264, 268 (5th Cir. 2024) (noting that even after *Jones*, "[n]umerous circuits agree that, absent police misconduct, the instinctive actions of a trained canine … constitute incidental contact, not an unconstitutional Fourth Amendment search."). We agree with the State that *Jones* and *Jardines* "have not altered the validity of this long-standing rule." Appellee's Br. at 14.

[36] But because Officer Powell facilitated Swag's entry into the vehicle by removing his lead, Swag was not acting on pure instinct and so *Jones* and *Jardines* are relevant to our analysis. *See United States v. Pulido-Ayala*, 892 F.3d 315, 318 (8th Cir. 2018) (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989)) ("A drug dog is an instrumentality of the police, and the actions of 'an instrument or agent' of the government are normally governed by the Fourth Amendment."), *reh'g denied*. This is especially so given the fact that Officer Powell *himself* leaned, reached, and peered into the vehicle before Swag alerted and consequently before there could have been probable cause to search the vehicle's interior. *See Stone*, 866 F.2d at 364 (explaining that "[o]nly *after* the

dog was in the [vehicle], where it 'keyed' on the [drugs], did the police have probable cause to search the car.") (emphasis added).[14]

[37] Thus, because Swag's entry was not instinctive, Swag and Officer Powell's physical intrusions into the vehicle without probable cause violated the Fourth Amendment. *See Jardines*, 569 U.S. at 11 ("That the officers learned what they learned only by physically intruding on [defendant's] property to gather evidence is enough to establish that a search occurred.").[15]

## 2. The Exclusionary Rule

[38] Because the officers searched Ocampo's vehicle without probable cause, we must determine whether to apply the exclusionary rule. "Under the exclusionary rule—unless an exception applies—evidence obtained both directly **and** derivatively from an illegal search must be suppressed." *Heuring v. State*, 140 N.E.3d 270, 273 (Ind. 2020) (emphasis in original). "It is the State's

---

[14] Notably, we observe that many federal circuit court cases applying the instinctive entry rule have found that officers had probable cause to conduct a search independent of the K9's intrusion into the vehicle. For example, in *Lyons*, the Eighth Circuit noted that during an exterior sniff the "dog alert[ed] to several areas of the van and almost indicat[ed] at the rear of the van before ultimately sticking his head through the window." 486 F.3d at 374. A similar fact pattern was present in *Guidry*, where the dog "indicated that the car contained drugs while sniffing the car's perimeter." 817 F.3d at 1006.

*Lyons*, *Guidry*, and like cases applying the instinctive entry rule to circumstances where the dog first alerted *outside* the vehicle are more comparable to *Harbaugh* than to the circumstances of the present case. *See Harbaugh*, 96 N.E.3d at 107 (holding that "since the State also presented evidence [the dog] alerted outside the vehicle, we need not address the legality of an interior dog sniff.").

[15] Because we agree with Ocampo that the officers searched his vehicle without probable cause in violation of the Fourth Amendment, we need not address Ocampo's Indiana Constitutional arguments, nor do we address whether the officers exceeded the scope of an otherwise lawful search by dismantling the vehicle's components.

burden to prove that one of these well-delineated exceptions is satisfied." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013).

[39]     The State argues that application of the exclusionary rule is inappropriate in this case but does not specifically identify which exception we should apply to reach that conclusion. However, we note that the State cites a line of United States Supreme Court opinions, starting with *United States v. Leon*, which stand for the proposition that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. 897, 916 (1984), *reh'g denied*. Under this principle, the exclusionary rule does not require the "suppressi[on of] evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant[.]" *Id.* at 922.

[40]     The Court expanded the application of this "good-faith exception" in *Davis v. United States*, which held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." 564 U.S. 229, 241 (2011). The State argues that *Davis* requires us to decline application of the exclusionary rule because when Officers Powell and James searched Ocampo's vehicle, "[n]either the United States Supreme Court nor the Indiana appellate courts had ever held that a dog sniff becomes a search if the dog enters the vehicle." Appellee's Br. at 23.

[41]     We are not persuaded. When the officers searched Ocampo's vehicle, it was well-settled by Indiana's Supreme Court that to search a vehicle's interior, "[t]he automobile exception requires probable cause to believe the vehicle

contains evidence of a crime." *Hobbs*, 933 N.E.2d at 1286. *Hobbs* further explained that to obtain probable cause, officers may "summon [a] canine unit to the scene to conduct an *exterior* sniff[.]" *Id.* (emphasis added).

[42] Neither the United States Supreme Court nor any Indiana appellate court has ever held that, absent probable cause, officers may permit a K9 to conduct an *interior* sniff. To the contrary, the United States Supreme Court held in *Jones* that police may not, without probable cause, physically intrude into a vehicle for the purpose of obtaining information. 565 U.S. at 404-05. And if *Jones* was not clear enough, the Court further held in *Jardines* that officers may not intrude into a constitutionally protected area to conduct a K9 sniff. 569 U.S. at 11-12.

[43] While we agree with the State that "the overwhelming weight of authority from other jurisdictions ha[s] long held that it is not a search as long as the officer has not directed, encouraged, or facilitated the entry," Appellee's Br. at 23, we also agree with the Tenth Circuit's conclusion that in those jurisdictions (including the Seventh Circuit) that have adopted the instinctive entry rule, it is "clearly established … that facilitating a dog's entry into a vehicle without first establishing probable cause constitutes an improper search." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 885 (10th Cir. 2014), *cert. denied*.

[44] Nonetheless, the State cautions us against suppressing evidence of Ocampo's drug activity, arguing that the exclusionary rule should only be applied where "the benefits of [deterring police misconduct] outweigh the costs to society of excluding probative evidence of guilt." Appellee's Br. at 23. But we are

mindful of Justice Scalia's observation in *Arizona v. Hicks* that "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." 480 U.S. 321, 329 (1987).

Moreover, the State concedes that "[e]xclusion is most appropriate where there is flagrant misconduct by police officers who knew, or should have known, that their conduct was unconstitutional." Appellee's Br. at 23. Given the weight of Indiana and federal authority addressing K9 sniffs, Officer Powell can "'be charged with knowledge'" that the physical intrusion into Ocampo's vehicle to conduct an interior sniff violated the Fourth Amendment. *Shotts v. State*, 925 N.E.2d 719, 724 (Ind. 2010) (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)).

For these reasons, the State has failed to meet its burden to prove that the good-faith exception to the exclusionary rule should be applied in this case. In light of the State's failure, evidence of the narcotics discovered in Ocampo's vehicle during Officer Powell and James's unlawful search "must be suppressed." *Heuring*, 140 N.E.3d at 273.

## Conclusion

We join the federal circuit courts that have held that a trained K9's *instinctive* entry into a vehicle is generally not a Fourth Amendment search. But it is axiomatic that for a K9's entry to be instinctive, it cannot result from an officer's direction, assistance, facilitation, or other intentional action.

Finding undisputed evidence that Officer Powell intentionally removed Swag's lead to "allow him to search without anything holding him back," we conclude that Swag's entry into Ocampo's vehicle was not instinctive. Tr. at 32. Consequently, the resulting interior dog sniff was a Fourth Amendment search lacking probable cause. And because we find that the State has failed to prove that an exception to the exclusionary rule applies to these circumstances, the trial court erred in denying Ocampo's motion to suppress.

Accordingly, we reverse and remand with instructions for the trial court to grant Ocampo's motion to suppress.

Reversed and remanded.

Altice, C.J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Bryan L. Cook
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana